325 So.2d 734 (1976)
David Michael LEMONS, Plaintiff-Appellant,
v.
Patricia Ann Hestrest, wife of David Michael LEMONS, Defendant-Appellee.
No. 10560.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
*735 Larry J. Green, Covington, for plaintiff-appellant.
Mike J. Balen, Covington, for defendant-appellee.
Before SARTAIN, BAILES and PICKETT, JJ.
SARTAIN, Judge.
This is an appeal by plaintiff, David Michael Lemons, from a judgment on a rule filed by defendant, Patricia Ann Hestrest, now wife of George J. Heine, and former wife of plaintiff, wherein defendant wife was granted a change in custody of a six year old girl from the plaintiff father to defendant mother.
The past history of these proceedings reveals that judgment by default granting plaintiff separation from bed and board as well as permanent care and custody of his minor daughter was rendered on December 11, 1970. Evidence adduced at the confirmation of said default consisted of testimony by plaintiff-husband that he was married to defendant, that she left without provocation, that she took the minor daughter with her but subsequently returned the minor to plaintiff six weeks later stating the child would be better off with the husband and that defendant had not returned. Plaintiff's mother also testified and stated that defendant left plaintiff, that defendant originally took the child but returned the child six weeks later stating that defendant felt the child would be better off with plaintiff and his mother and that the child lived with her since that time.
Judgment by default granting plaintiff a final divorce was ultimately rendered on January 24, 1972. Evidence produced at the confirmation of those proceedings indicated through testimony from plaintiff that there was no community property acquired during the marriage and that he wished to retain permanent care and custody of the minor child. Plaintiff's father testified that since December 11, 1970 plaintiff and his daughter lived in plaintiff's father's residence and that to his knowledge plaintiff and his wife had not lived together as man and wife since the beginning of the proceedings. Permanent care and custody *736 was erroneously awarded to defendant mother in the divorce decree which award was subsequently corrected and amended by rule on February 14, 1972 to maintain custody with the father.
Subsequently on June 5, 1974 the rule which is the subject of the present suit was filed wherein defendant wife sought custody of the minor child alleging that at the time of the divorce "she had no permanent home nor any visible means of support and therefore relinquished custody of the minor child." She alleged further that she had since remarried and could now provide for her minor daughter.
Following the hearing held on July 19, 1974 on the above rule, the trial judge, in his written reasons, stated that there was no moral unfitness on the part of either of the parties and that he was in fact impressed with each of them. The pertinent portion of his findings of fact as they appear in his written reasons is as follows:
"This record does not present facts suggestive of unfitness on the part of either parents. Both parents have remarried. Mr. Lemons and his present wife have a child of their own. The mother is now married to Mr. Heine and he is gainfully employed and he testified that he is very willing for the young child to live with them.
"This court's understanding of the facts is that the child has actually spent a great deal of time in the home of the paternal grandmother, Mrs. George Lemons. Elizabeth apparently lived in the grandmother's home from March of 1973 through June 1 of 1974this year. He had remarried in March of 1972 and the child actually resided with him and his new wife for a yearthat is until March of 1973 and from March of 1973 through June 1 of 1974, resided with the grandmother, and then in June of this year the child was put again in the home of the father.
"This court makes this recitation of the facts because there is no suggestion of unfitness on the part of either of these parents. Both of them impressed the court as being decent young people who simply had an unsuccessful marriage. There is no factual basis in the record, in this court's judgment, for any conclusion other than this one.
* * * * * *
"What this trial court has on its hands now is simply a matter where the custody of this child is being presented to the court in a contested proceeding for the first time, and therefore, the Court would believe that it is in the best interest of this child that she be placed in the custody of her mother.
"This judgment does not carry with it any suggestion that the father has not done a good job, and it further is based on the understanding that if the wife were to have been made to meet the double-burden of proof in this case she did not do so because there has been no proof that it is detrimental to the child to remain where she is. This judgment rests simply on the proposition that the Court feels it must follow the Penton case and not require the wife to meet the double-burden of proof. Since she does not have to meet that double burden of proof you then look at the parties as if they are standing before the Court for the first time and the better interest of the child will lie with it being with the mother."
Plaintiff-appellant now urges on appeal that the trial judge erred in holding that there had not been an initial determination of custody by the court and thus not requiring the wife to meet the so-called "double-burden" of proof normally required of a party seeking a change in custody. He alleges further error on the part of the trial judge in holding that it is in the best interest of a child to grant custody to the mother during its "tender years."
*737 We affirm the decision of the trial judge for reasons stated herein.
The "double-burden" of proof referred to by plaintiff-appellant is well enunciated by our Supreme Court in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) wherein the court states that when an initial custody decree has been rendered and a subsequent modification of that decree is sought, then it is incumbent upon the party requesting modification to prove that the conditions under which the children are presently living are detrimental to their interests, and secondly, that the applicant can and will provide a good home and better environment should custody be changed.
Subsequently, in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), the Supreme Court, citing Landry, stated:
"(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them for the environment to which they are accustomed." (authorities omitted)
The "above principles" in light of which the "considered decree" is to be made are enumerated in Fulco as follows:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. (authorities omitted)
"(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father." (authorities omitted)
In relying on Fulco, the trial judge concluded in the present case that there had not been a considered decree of custody and therefore the wife need not prove the factors set out in Decker, supra. We are inclined to agree with this conclusion.
This court held in Gulino v. Gulino, 303 So.2d 299 (La.App. 1st Cir., 1974) that a considered decree of custody is one which is rendered after a trial of the issue and decision thereon applying pertinent principles of law. Thus in Gulino a custody decree rendered merely with the consent of the parties was held not to be a "considered decree" as required by Decker through Fulco, and therefore the applicant was not required to overcome the "double burden" standard. The same result was also reached in Penton v. Penton, 260 So. 2d 5 (La.App. 1st Cir. 1972) where the court was again faced with a consent judgment.
In the case of Southern v. Southern, 308 So.2d 424 (La.App. 3rd Cir. 1975), writs refused La., 313 So.2d 242, the court held that the default judgment that was there presented was a considered decree of custody based upon the evidence taken prior to the judgment's rendition. The court in its discretion found such evidence to show moral unfitness on the part of the mother and thus the "double burden" rule was there held to be applicable.
That same court in Swann v. Young, 311 So.2d 617 (La.App. 3rd Cir. 1975) explained Southern as follows:
". . . The wife in Southern had been personally served but did not respond to her husband's suit. This court, however, held that this default judgment was a `considered decree' based upon evidence taken prior to the judgment establishing: (a) that the wife left the marital home, abandoning the husband, and did not return; (b) that the children *738 lived with the wife's mother, however, the husband and not the wife actually cared for the children with the assistance of the mother-in-law; and (c) that the wife rarely visited the children and then only for very limited periods."
The court in Swann then went on to hold that the default judgment that it was presented with was not a considered decree of custody because
". . . there was no evidence offered at the `default or consent' judgment granting custody to the father, in regard to the mother's fitness to have the care, custody and control of the children."
Thus the "double burden" rule was held not to apply.
In the present case, after a careful perusal of the evidence presented at the confirmation hearings, we conclude the trial judge was correct in ruling that there was not a considered decree of custody within the meaning of the jurisprudence as no evidence was offered reflecting upon the mother's moral fitness.
Pursuant to this finding the trial judge correctly applied the principles of Fulco to be considered in cases of initial determinations of custody that in light of the best welfare of the children it is generally best to grant custody to the mother especially in children of tender years, unless it be shown that the mother is morally unfit or otherwise unsuitable. As pointed out in Fulco and numerous other cases, the trial judge's findings with respect to these matters are entitled to great weight and his discretion on these issues shall not be disturbed absent a clear showing of abuse thereof.
The testimony adduced at the hearing on the rule clearly convinces us that the trial judge was well within his judicial discretion in finding no moral unfitness on the part of the mother herein. Certain testimony distinctly shows that the mother called and visited with the child on a very frequent basis throughout the time the child was away from her. It further shows that on several occasions when the child was sick the mother would go to where the child was presently residing and stay with the child attending to her needs from morning until night. No evidence was offered or even implied that the mother was ever anything other than a faithful and dutiful parent. Thus it is obvious that we can not say there has been a clear abuse of discretion by the trial judge on this issue for its substantiation in the record is more than adequate.
Accordingly, for the above and foregoing reasons, the decision of the trial court is affirmed with all costs of these proceedings to be borne by plaintiff-appellant.
Affirmed.